IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JARRICK EARL DENEWILER,

    Plaintiff,

v.                                                               No. 22-CV-631-DHU-KRS

SANTA FE COUNTY ADULT
DETENTION FACILITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER TO CLARIFY CLAIMS**

THIS MATTER is before the Court on Plaintiff Jarrick Earl Denewiler's Civil Complaint, filed in the State of New Mexico, First Judicial District Court, Santa Fe County on October 29, 2021, and removed to this Court by Defendant on August 25, 2022. (Doc. 1-1) (the "Complaint"). When he filed the Complaint, Denewiler was a state prisoner housed in the Santa Fe County Adult Correctional Facility. He has since been released from custody. He is proceeding *pro se* and *in forma pauperis*. Having reviewed the Complaint and the relevant law, the Court will require Denewiler to clarify whether his claims arise under federal or state law so the Court may determine whether this case was properly removed from state court.

    I.      Background.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes that the following facts, taken from the Complaint are true.

Denewiler alleges that in September 2021 while he was incarcerated in the Santa Fe County Adult Correctional Facility ("SFCACF") and Derrek Williams was the acting warden, SFCACF brought a private contractor in to perform construction repairs to a prison cell. (Doc. 1-1 at 1).

Denewiler was allegedly locked in a steel holding cage while the construction was ongoing. (Id.). It is not clear from the Complaint whether the steel holding cage was in the cell where the construction was taking place, or nearby. (Id.). Regardless, Denewiler alleges that he could smell gasses caused by the welding, could see the blue lights of the ark, and he could hear and smell spray paint. (Id.). He got dizzy, confused, and experienced a headache. (Id.). He asked an officer named Downey to take him to a medical unit, but Downey refused. (Id.). He then asked an officer named Robero for the same, and Robero complied. (Id.). In the fifty days preceding the original filing, in state court, of the Complaint, Denewiler told SFCACF staff about his continuing symptoms, but the staff refused to provide medical care. (Id.). Based on the foregoing, Denewiler seeks approximately $12 million in damages. It is not clear from the Complaint whether Denewiler intends to pursue his claims under 42 U.S.C § 1983 or under the New Mexico Civil Rights Act or both. Until this matter is clarified, the Court cannot determine whether federal jurisdiction exists. The Court will therefore require Denewiler to clarify the nature of his claims before the Court reviews the merits of the Complaint.

II. Discussion.

A. Federal Jurisdiction.

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). There are two statutory bases for federal subject-matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction under 28 U.S.C. § 1331. Federal-question jurisdiction exists for all claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is

required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Id.* In the Tenth Circuit, "the required federal right or immunity must be an essential element of the plaintiff's cause of action, and that the federal controversy must be 'disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.'" *Fajen v. Found. Rsrv. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). This principle "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. 386, 392. "Jurisdictional requirements cannot be waived or forfeited, [and must] must be raised by courts *sua sponte*[.]" *Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S. Ct. 1493, 1497 (2022).

B.  <u>Plaintiff Must Clarify His Claims</u>.

Defendants construe the Complaint as seeking to state claims under 42 U.S.C. § 1983 for violations of Plaintiff's federal constitutional rights. (Doc. 1-2). But it is not clear from the face of Denewiler's Complaint whether he seeks to state claims for violations of his federal constitutional rights or whether he seeks to state claims for violations of his rights under the New Mexico Civil Rights Act. Either inference is equally supportable, as the crux of the Complaint appears to be a claim of deliberate indifference to serious medical needs—*i.e*, a form of cruel and unusual punishment, which is prohibited under the Eighth Amendment to the United States Constitution and under Article 2, Section 13 of the New Mexico Constitution. Denewiler is the master of his claims. He must therefore clarify whether they arise under federal or state law so the Court may determine whether removal was proper or whether this case should be remanded to the state court for lack of federal jurisdiction. To inform Denewiler's analysis, the Court provides the following

general overview of the governing law.

1.  The Federal Civil Rights Act.

42 U.S.C. § 1983 provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. Section 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). To plead a viable claim, a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. A § 1983 complaint must clearly identify "exactly who is alleged to have done what to whom" so that each defendant has notice of the basis of the claims against them particularly. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

A § 1983 action against a public official or entity may not be based solely on a theory of *respondeat superior* liability for the actions of government employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To state a viable § 1983 claim against a local governing body (such as a county), a plaintiff must allege with specificity that conduct undertaken pursuant to an "official policy [or governmental custom] is responsible for a deprivation of rights protected by the constitution." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978); *see Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) ("[A] local

governmental entity ... cannot be held liable for the acts of its employees on a theory of respondeat superior. Rather, it will only be held liable for its own acts—acts it has officially sanctioned or ordered."). "A challenged practice may be deemed an official policy or custom for § 1983 ... purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policy maker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 770 (10th Cir. 2013).

2.  <u>The New Mexico Civil Rights Act</u>.

Before the enactment of the New Mexico Civil Rights Act, NMSA 1978, § 41-4A-1 through 41-4A-13, the only possibility for New Mexicans seeking redress against state government officials who violated the prohibition against cruel and unusual punishment was to bring a § 1983 claim for a violation of the Eighth Amendment. *See* Carson Thornton González, *A Deliberate Difference?: The Rights of Incarcerated Individuals Under the New Mexico State Constitution*, 52 NMLR 548, 559 (2022). This changed with the introduction of the New Mexico Civil Rights Act. *Id.* For claims arising after July 1, 2022, the New Mexico Civil Rights Act creates a cause of action for violations of rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico. *See* NMSA 1978 §§ 41-4A-3; 41-4A-12. Relevant to the allegations in the Complaint, Article 2, Section 13 of the New Mexico Constitution prohibits cruel and unusual punishment.

Unlike § 1983, the New Mexico Civil Rights Act provides that public bodies "shall be held liable for conduct of individuals acting on behalf of, under color of or within the course and scope of the authority of the public body." *Id.* Claims brought pursuant to the New Mexico Civil Rights Act [must] be brought exclusively against a public body." NMSA 1978 § 41-4A-3(C). "As used in the New Mexico Civil Rights Act, 'public body' means a state or local government, an advisory

board, a commission, an agency, or an entity created by the constitution of New Mexico or any branch of government that receives public funding[.]" NMSA 1978 § 41-4A-2. The New Mexico Civil Rights Act also waives sovereign immunity and prohibits the use of the defense of qualified immunity for causing the deprivation of any rights, privileges or immunities secured by the bill of rights of the New Mexico Constitution. NMSA 1978, §§ 41-4A-4, 41-4A-9.

3. <u>Deadline for Plaintiff to Clarify His Claims.</u>

In a written response to this Order filed within thirty days of the entry of this Memorandum Opinion and Order, Denewiler should clarify whether his claims arise under 42 U.S.C. § 1983, under the New Mexico Civil Rights Act, or both. Based on Denewiler's response, the Court will determine whether it has jurisdiction over the claims or whether this case must be remanded to the state court in which it was originally filed.

**IT IS THEREFORE HEREBY ORDERED** that **within thirty days** of the entry of this Memorandum Opinion and Order, Denewiler must clarify in writing whether he intends to pursue his claims pursuant to 42 U.S.C. § 1983 or the New Mexico Civil Rights Act or both. Failure to timely comply with this directive may result in dismissal of the Complaint without prejudice.

_____
UNITED STATES MAGISTRATE JUDGE